UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO ANTONIO CASTELLON-GUIFARRO,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, *et al.*,<br><br>Respondents. | Case No.  1:26-cv-04241   (AMO)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. Nos. 1, 3 |

This habeas action concerns the detention of Petitioner Marco Antonio Castellon-Guiffaro, a noncitizen who has lived in the United States for over seven years.  Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2) as mandating detention for all noncitizens present in the United States without admission, Petitioner is detained without any opportunity for a bond hearing.  This matter is before the Court on Petitioner's writ of habeas corpus and motion for temporary restraining order.  *See* Dkt. Nos. 1, 3.  For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus in part, and orders that Petitioner be provided a substantive bond hearing before an immigration judge.

**I.      BACKGROUND**

Petitioner is a citizen of Honduras who entered the United States on March 28, 2019.  Dkt. No. 8 at 13.  Upon entry, "[a] Border Patrol Agent encountered [Petitioner] in the Rio Grande Valley," and "arrested and transported [him] to the Rio Grande Valley Sector Centralized Processing Center … for further processing[.]"  *Id*. at 14.  The Department of Homeland Security ("DHS") then elected to release Petitioner "on his own recognizance and placed him into removal proceedings through the issuance of a Notice to Appear, charging him with inadmissibility pursuant to INA § 212(a)(6)(A)(i)" *Id*. at 6.  Since his release over seven years ago, Petitioner applied for asylum and began living with

his two daughters and four-year-old grandson in California.  Dkt. No. 3 at 7.

Respondents contend that Petitioner violated the terms of his release by failing seven home visits and check-ins between March 9, 2021 and September 30, 2025.  Dkt. No. 8 at 2.  In support, Respondents offer the Declaration of Deportation Officer Abad, who contends that Petitioner "[o]n multiple occasions between March 2021 and September 2025 … violated the terms of his release."  *Id*. at 8.  Respondents also attached an I-213 Form (*id*. at 18), which listed Petitioner's violations, but did not include any supporting documentation or other evidence of warnings given to Petitioner.  Petitioner—proceeding through counsel—challenges these contentions, however, did not submit any evidence to dispute Respondents' allegations, such as documents or a declaration, and only notes that "it is entirely possible that Petitioner did not see the notifications in the app as well, or did not manage to connect with the agent in charge of the home inspection."  Dkt. No. 9 at 3.

Respondents also contend that Petitioner "is wanted for homicide in Honduras."  Dkt. No. 8 at 7.  In support, Respondents submitted a Spanish-document which they contend is a warrant for Petitioner's arrest.  *Id*.  Petitioner challenges the authenticity of this document on reply.  Dkt. No. 9. at 3–4.

Petitioner was re-detained by Immigrations and Customers Enforcement ("ICE") on March 19, 2026 outside his home while he was moving his car into his driveway.  Dkt. No. 1 ¶ 22.  On June 2, 2026, Petitioner filed a petition for writ of habeas corpus, arguing that his re-detention without a finding of flight risk or danger violates the due process clause of the Fifth Amendment (count 1) and the eighth amendment (count 2).  *Id*. ¶¶ 61–68.  He requests that the Court either "determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention[,] and order Petitioner's release[,]" or "[i]n the alternative … order Petitioner's release within 30 days unless Defendants schedule a hearing before an immigration judge where … the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger" to continue his detention.  *Id*. at 16.  In their opposition to the motion to the temporary restraining order and Answer to the Petition, the

Government relies entirely on its new interpretation of 8 U.S.C. § 1225(b)(2) ("Section 1225") as mandating Petitioner's detention.  *See* Dkt. No. 8 at 2–3.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

Petitioner asserts two claims for relief, including that his detention violates the due process clause of the Fifth Amendment (count 1) and the eighth amendment (count 2).  Because Petitioner's procedural due process claim affords Petitioner all the relief to which he is entitled— namely, a bond hearing—the Court need not and does not reach Petitioner's other remaining claims for relief.

### A.    8 U.S.C. § 1225(b)(2) Does Not Apply to Petitioner.

Before turning to Petitioner's due process claim, the Court addresses whether Petitioner may be mandatorily detained under 8 U.S.C. § 1225(b)(2) as Respondents contend.  *See* Dkt. No. 8 at 2–3.  This Court—as well as the majority throughout the United States—have rejected this argument.  *See, e.g.*, *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514, at *7–10 (E.D. Cal. Oct. 9, 2025); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at 8–10 (N.D. Cal. Sept. 12, 2025); *D. v. Robbins*, No. 1:25-CV-01463-KES-SKO (HC), 2026 WL 84302, at *5 (E.D. Cal. Jan. 12, 2026).  Respondents have provided no

United States District Court
Eastern District of California

reason to deviate from these prior, well-reasoned orders.  As such, Section 1225(b)(2) is not a lawful basis for Petitioner's detention.

### B.      Petitioner's Re-Detention Violated Due Process.

As the Government makes no further argument regarding the basis for Petitioner's detention, the Court next turns to Petitioner's due process claim.  Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1.      Liberty Interest

The Court finds that Petitioner obtained a liberty interest in his continued freedom following his release from custody in 2019.  "[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.  *Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33 (N.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").  As such, the Government's election to release petitioner "provided [him] with a liberty interest that is protected by the Due Process Clause." *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2026 WL 1162724, at *4 (N.D. Cal. Apr. 29, 2026); *see also He v. Lyons*, No. 25-cv-10639-JSC, 2026 WL 280074, at *3 (N.D. Cal. Feb. 3, 2026) ("Courts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond."); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26,

2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

### 2.   Due Process

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for over seven years. In the intervening years he has developed ties in his community, and has been allowed to live at liberty with his children and grandchild. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, there is a risk of erroneous deprivation under the present circumstances where Petitioner has not been afforded a hearing. In releasing him on his own recognizance in 2019, DHS necessarily concluded that Petitioner was not a flight risk or danger to the community. *Noori v. LaRose, et al.,* 2025 WL 2800149, at 13 * (S.D. Cal. Oct. 1, 2025) (In general, "'[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'") (quoting *Saravia v. Sessions,* 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v. Sessions,* 905 F.3d 1137 (9th Cir. 2018)). The record, however, shows that Petitioner may have violated the terms of his release, including missing both check-ins and in-person meetings, and potentially has a serious criminal charge pending against him. Dkt. No. 8 at 1–3. The question, however, remains whether these contentions would constitute changed circumstances before an immigration judge justifying

United States District Court
Eastern District of California

revocation of Petitioner's release.

In instances where the Government has previously detained and then released a noncitizen, Courts in this Circuit have generally ordered release and a pre-deprivation hearing. However, as recognized by another court in this district:

> [T]here may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 795 F.Supp.3d 1316, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted her detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before her immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for her arrest. …
>
> In contrast, this Court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretexual."

*M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT-SKO, 2025 WL 3265446, at *11–12 (E.D. Cal. Nov. 24, 2025) (citations omitted).

Here, there is no indication that ICE's reliance on Petitioner's alleged violations and arrest warrant for homicide were pretextual. "If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *Martinez* Hernandez, 2025 WL 2495767, at *12 (collecting cases ordering bond hearings, rather than release, under similar circumstances). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, 791 F.Supp.3d 1021, 1035 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Id.* at 1094. Providing Petitioner with a post-deprivation hearing here would impose a minimal burden on the Government relative due process concerns here.

### C.    Burden of Proof

Petitioner requests that the burden of proof be placed on Respondents if the Court orders a post-deprivation hearing. Dkt. 1 at 16. In the context of a § 1226(a) bond hearing, the Ninth Circuit held that due process did not require that the burden be placed on the Government where the petitioner requested a second bond hearing. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1212 (9th Cir. 2022). The Court, however, did not address the burden of proof applicable under the present circumstances—i.e., a situation where an individual's prior release was revoked without seemingly any process.

The Court in *Pinchi* discussed why burden-shifting may be warranted for individuals—like Petitioner—who have been paroled from immigration custody after their initial detention, explaining that release "constitue[s] an 'implied promise' that her liberty would not be revoked unless she 'failed to live up to the conditions of her release.'" *Pinchi*, 2025 WL 2084921, at *4 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). For that reason, it is appropriate that the burden be on the Government a pre-deprivation hearing to demonstrate that the Petitioner has failed to live up to those conditions. *See id.* at *7. "Doing so is logical even for a post-detention custody hearing[.]" *M.R.R.*, 2025 WL 3265446, at *14. "Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Id.*

### IV.    CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED in part. IT IS HEREBY ORDERED that:

United States District Court
Eastern District of California

United States District Court
Eastern District of California

1.      Petitioner SHALL be provided a *substantive* bond hearing within fourteen (14) days at which the Immigration Judge will determine whether Petitioner poses a risk of flight or a danger to the community if he is released.

2.      At any such hearing, the Government SHALL bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner SHALL be allowed to have counsel present.

3.      The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: June 18, 2026

ARACELI MARTÍNEZ-OLGUÍN
United States District Judge

8